

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
LAREDO DIVISION

United States District Court
Southern District of Texas
FILED
JAN 2 1 2009
Michael N. Milby, Clerk

| | |
|---|---|
| JAMES HERNANDEZ, *et al*, § | |
| § | |
| Plaintiffs, § | |
| VS. § | CIVIL ACTION NO. L-07-132 |
| § | |
| MARIO'S AUTO SALES, INC. D/B/A § | |
| MARIO'S AUTO SALES, *et al*, § | |
| § | |
| Defendants. § | |

## MEMORANDUM AND ORDER

Pending before the Court is Plaintiffs' "Motion to Amend the Scheduling Order and Extend the Discovery Deadline," which is unopposed by Defendant General Motors. (Dkt. No. 67). Also pending before the Court is Defendant's Response, which may be more appropriately categorized as a motion to extend the discovery deadline. (Dkt. No. 68). For the reasons discussed below, Plaintiffs' Motion (Dkt. No. 67) is DENIED in its entirety. Defendant's Motion (Dkt. No. 68) is GRANTED in part and DENIED in part. Accordingly, the Court will hereby extend the discovery period for the sole purpose of allowing Defendant the opportunity to depose James Hernandez ("Mr. Hernandez"). Defendant must depose Mr. Hernandez by January 30, 2009.

### I. Background

#### a. Procedural Background

Plaintiffs have brought this products liability suit against General Motors Corporation. The incident giving rise to this suit is a single-vehicle accident which resulted in the death of Beyda Buruato ("Ms. Buruato"). (Dkt. No. 67 at pg. 3). On October 9, 2005, Ms. Buruato was driving a 1995 Chevrolet Camaro owned by Mr. Hernandez in a northbound direction on U.S.

Highway 83 MM 772 south of Zapata in Zapata County, Texas. (Dkt. No. 63 at pg. 3; Dkt. No. 68 at ¶ 13). As Ms. Buruato was driving, she lost control of the vehicle, drove off the road, and struck a tree. (*Id.*). It is alleged that Ms. Buruato sustained fatal injuries as a result of the crash. (*Id.*). During the accident, Ms. Buruato's car was engulfed by flames and most of the car's interior was destroyed. (Dkt. No. 67 at pg. 3). Plaintiffs allege that defects in the vehicle's suspension system caused the car to be unreasonably dangerous and were the producing and contributing causes of the fatal injuries and wrongful death of Ms. Buruato. (Dkt. No. 43 at pgs. 5-6). Plaintiffs also contend that Defendant General Motors Corporation, as manufacturer and seller of the Chevrolet Camaro, was responsible for placing it in the stream of commerce with the faulty suspension system, and that Defendant's negligence was the proximate cause of the incident and the damages suffered by Plaintiffs. (*See* Dkt. No. 63 at pgs. 4, 6).

The parties in this case have repeatedly shown an inability to meet the Court's scheduling order deadlines. On April 3, 2008, the Court issued a scheduling order setting the discovery deadline at September 5, 2008. (Dkt. No. 18). On July 7, 2008, Plaintiffs filed a motion to extend their time to file expert reports, which was denied for failure to show good cause. (Dkt. No. 29). On August 18, 2008, Plaintiffs filed a motion for reconsideration. (Dkt. No. 35). Within this motion, Plaintiffs also moved to extend all remaining scheduling order deadlines to allow adequate time for the completion of discovery. (*Id.*). This time, the Court granted Plaintiffs' Motion and extended not only the expert witness deadlines but also the discovery deadline, which was extended by three months from September 5, 2008 to December 5, 2008. (Dkt. No. 35).

In spite of the December 5th discovery deadline, on October 13, 2008, Defendant General Motors noticed depositions of Plaintiffs' expert witnesses for December 15th, 16th, and 17th.

2

(Dkt. No. 68, Main Doc. at ¶ 15 and Ex. A, Letter dated October 13, 2008). Defendant claims that the depositions were scheduled after the deadline, because Plaintiffs were unresponsive to Defendant's attempts in scheduling the depositions. (Dkt. No. 68 at ¶ 15). However, instead of informing the Court of these scheduling issues or moving to compel the depositions of these experts, Defendant simply noticed the depositions outside of the court-ordered discovery deadline, even though there were approximately eight weeks remaining in the discovery period.

On November 21, 2008, Plaintiffs filed a motion for a protective order, asking the Court to move these expert depositions, primarily due to family issues. (Dkt. No. 56). The Court held a hearing on this motion on November 26, 2008, at which time the parties notified the Court that several fact witnesses and expert witnesses still needed to be deposed in spite of the three-month extension of the discovery deadline. The parties could not adequately explain both their lack of diligence in taking these depositions at an earlier date and their failure to notify the Court of the scheduling issues prior to the eleventh hour of the extended discovery period.

On December 2, 2008, the Court granted in part and denied in part Plaintiffs' motion for a protective order. (Dkt. No. 59). The Court granted the protective order for depositions noticed outside the discovery deadline and ordered the parties to meet before December 4th in order to discuss the scheduling of the remaining depositions. (*Id.*). The Court also ordered the parties to discuss whether they intended to file a second motion to extend the discovery deadline, and ordered that any further motions to extend deadlines set out good cause for modification of the scheduling order *in detail*.

On December 4, 2008, Plaintiffs filed a second motion for protective order stating that Plaintiffs' counsel was not available on December 5th for depositions, noticed by Defendant on November 25, 2008. (Dkt. No. 64 at pg. 5). The parties also filed a joint advisory to the Court,

3

moving to extend the discovery deadline from December 5, 2008 to March 6, 2009. (Dkt. No. 64). Ignoring the Court's order of December 2, 2008, the parties failed to detail any good cause for the modification. The Court held a status conference on December 4, 2008, and, on December 5, 2008, issued an order denying without prejudice the requested extension of the discovery deadline. (Dkt. No. 66). The Court ordered that any new motion to amend the scheduling order be submitted by December 8, 2008. (*Id.* at pg. 2). The Court also denied Plaintiffs' motion for a protective order to prevent the depositions to be held December 5, 2008, because Plaintiffs' "good cause" was a scheduled vacation with his wife. (Dkt. No. 66 at pg. 2). However, the Court granted Plaintiffs' oral motion for a protective order with regards to the December 5th deposition of Deputy Leonel Guerra of the Zapata County Sheriff's Department ("Deputy Guerra"), who had not been noticed by Defendant. (*Id.*).

On December 8, 2008, Plaintiffs filed the instant motion for extension of the discovery deadline, requesting a March 6, 2009 deadline. (Dkt. No. 67). On December 10, 2008, Defendant filed its response, stating its reasons why the discovery deadline should be extended. (Dkt. No. 68). Finally, on December 31, 2008, Plaintiffs filed a supplement to their motion, requesting that the discovery deadline be extended to April 6, 2009. (Dkt. No. 69).

### b. Parties' Arguments

In this case, Plaintiffs set forth five reasons for extending the discovery deadline. First, Plaintiffs contend that certain unidentified fact witnesses were discovered during the depositions taken on December 4th and 5th, the last two days of the discovery period, and that this necessitates the taking of further depositions and the extension of the discovery deadline. (Dkt. No. 67 at pgs. 2-6). Furthermore, Plaintiffs allege that the discovery time period they agreed to was unrealistic given the complexity of the issues involved in this case. (*Id.* at pg. 6). Plaintiffs'

counsel also contends that he has experienced an increased workload as a result of the merger of his law firm with another firm. (*Id.*). Next, Plaintiffs argue that they have had difficulties coordinating their schedule with that of their expert witness, Murat Okcuoglu, and finding a time for him to inspect the subject vehicle and complete his expert reports. (*Id.*). Lastly, Plaintiffs allege that Defendant has been uncooperative and produced unresponsive documents in answer to Plaintiffs' discovery requests. (*Id.* at pgs. 7-8).

Defendant is unopposed to Plaintiffs' Motion to Extend the Discovery Deadline. (Dkt. No. 67, Main Doc. at Certificate of Conference). Moreover, Defendant filed a Response to Plaintiffs' motion in which it requested that the Court grant the motion and allow Defendant a corresponding extension so that it may designate its experts and take additional expert and fact witness depositions. (Dkt. No. 68 at ¶ 21). Defendant asserts three main reasons for extending the discovery deadline. First, Defendant claims that the depositions of Plaintiffs' experts is absolutely necessary to its defense. (*Id.* at ¶ 11). Second, Defendant argues that additional time should be granted in order to allow both parties to depose previously unknown and not-yet-deposed witnesses. (*Id.* at ¶¶ 12-14). Lastly, Defendant points to its own diligence in complying with the discovery deadline and Plaintiffs' lack of cooperation in scheduling depositions. (*Id.* at ¶¶ 15-17).

## II. Discussion

### a. Legal Standard

Federal Rule of Civil Procedure 16(b)(4) provides that a scheduling order may only be modified "for good cause and with the judge's consent." The Fifth Circuit has explained that "[t]he good cause standard requires the 'party seeking relief to show that the deadlines cannot reasonably be met despite the diligence of the party needing the extension.'" *S&W Enters.,*

*L.L.C. v. SouthTrust Bank of Ala., NA*, 315 F.3d 533, 535 (5th Cir. 2003) (quoting 6A CHARLES ALAN WRIGHT ET AL., FEDERAL PRACTICE AND PROCEDURE § 1522.1 (2d ed. 1990)). In other words, the party who seeks to modify a scheduling order deadline must show that, despite acting diligently, it will still be unable to meet that deadline. *Rivera v. County of Willacy*, 2007 U.S. Dist. LEXIS 41401, at *2 (S.D. Tex. June 6, 2007). Mere stipulations by the parties do not constitute good cause. *Id.* at *3 (citing *Chiropractic Alliance of N.J. v. Parisi*, 164 F.R.D. 618, 621 (D.N.J. 1996)). "Neither the parties nor their counsel have the authority to stipulate or otherwise agree to changes in the Court's orders regarding discovery or any other scheduling matter unless expressly authorized to do so by Rule or by Court order." *Olgyay v. Society for Environmental Graphic Design*, 169 F.R.D. 219, 219 (D.D.C. 1996).

In the context of an untimely motion to submit expert reports, designate experts, or amend the pleadings, the Fifth Circuit Court of Appeals applies a four-factor balancing test to determine whether good cause exists: (1) the explanation for the failure to adhere to the deadline at issue; (2) the importance of the proposed modification to the scheduling order; (3) potential prejudice; and (4) the availability of a continuance to cure such prejudice. *See Reliance Ins. Co. v. La. Land & Exploration Co.*, 110 F.3d 253, 257 (5th Cir. 1997) (submit expert reports); *see Geiserman v. MacDonald*, 893 F.2d 787, 790 (5th Cir. 1990) (designate expert witnesses); *see S&W Enters., LLC*, 315 F.3d at 536 (amend the pleadings). At least one district court in the Southern District of Texas has also utilized this test in the context of a motion to reopen discovery. *See United States v. McFerrin*, 2007 U.S. Dist. LEXIS 91022, at *2 (S.D. Tex. Dec. 11, 2007) (citing *Southwestern Bell Tel. Co. v. City of El Paso*, 346 F.3d 541, 546 (5th Cir. 2003)); *see also Carmona v. Carmona*, 2006 U.S. Dist. LEXIS 88868, at *6-7 (S.D. Tex. Dec. 8,

2006) (citing *Hawthorne Land Co. v. Occidental Chem. Corp.*, 431 F.3d 221, 227 (5th Cir. 2005)).

Notwithstanding this four-factor test, the court still has the "inherent power to control its own docket to ensure that cases proceed before it in a timely and orderly fashion." *U.S. v. Waldman*, 579 F.2d 649, 653 (1st Cir. 1978) (citing *United States v. Correia*, 531 F.2d 1095, 1098 (1st Cir. 1976)). The purpose of a scheduling order is to allow the district court to control and expedite pretrial discovery matters. *Geiserman*, 893 F.2d at 790. Scheduling orders and their enforcement are regarded as essential in ensuring that cases proceed to trial in a just, efficient, and certain manner. *Rouse v. Farmers State Bank of Jewell, Iowa*, 866 F. Supp. 1191, 1198 (N.D. Iowa 1994) (citations omitted). To achieve this end, the Court is given broad discretion so that the integrity and purpose of the pretrial order may be preserved. *See Bilbe v. Belsom*, 530 F.3d 314, 317 (5th Cir. 2008) (stating that the district court's decision regarding whether to modify a scheduling order is afforded great deference, especially where the facts of the case suggest a lack of diligence on the part of the movant); *S&W Enters., LLC*, 315 F.3d at 535; *Hodges v. United States*, 597 F.2d 1015, 1018 (5th Cir. 1979).

### b. Analysis

In essence, the parties request an extension of the discovery period so that they may conduct: 1) Mr. Hernandez's and Deputy Guerra's depositions; 2) depositions of the expert witnesses for both sides; 3) depositions of certain unidentified fact witnesses; and 4) written discovery.

An extension of the discovery deadline will be allowed as to Mr. Hernandez. Defendant was diligent in attempting to schedule and secure his deposition. (*See* Dkt. No. 68 at ¶ 16). For example, Defendant filed a motion to compel his deposition. However, Defendant's failure to

depose Mr. Hernandez was through no fault of its own. Mr. Hernandez simply failed to appear on the noticed date. (*Id.*). On the other hand, the parties will not be granted an extension of time for the purpose of deposing Deputy Guerra. As discussed in the Court's order memorializing the December 4th status conference (Dkt. No. 66), Defendant failed to notice Deputy Guerra's deposition. Thus, Defendant's lack of diligence with regard to scheduling this witness's deposition precludes it from having the opportunity to depose this witness outside of the discovery period.

With respect to their expert witnesses, the parties have failed to show good cause for extending the discovery deadline. The parties were not diligent in scheduling the depositions of their respective experts. The Court had already granted a three-month extension to the initial five-month long discovery period. Yet the parties were still unable to come to an agreement and schedule these depositions within that timeframe.

For example, Defendant claims that it diligently pursued Plaintiffs' cooperation in scheduling the expert depositions within the discovery deadline, but that all attempts by Defendant failed to result in an agreed date. (*Id.* at ¶ 15 and Exhibit A). Defendant points to letters written to Plaintiffs on September 5th and October 3rd of 2008 requesting dates on which Plaintiffs' experts would be available for deposition. (Dkt. No. 68, Exhibit A). However, instead of seeking formal court action to remedy this, Defendant arbitrarily noticed the depositions of Plaintiffs' experts for dates outside of the discovery deadline. Thus, based on the Court's review of the record, it appears that there was simply a lack of communication and cooperation between the parties' counsel.

The parties have also failed to show good cause as to the unidentified fact witnesses. Both parties claim that during depositions of fact witnesses taken on December 4th and

December 5th, they became aware of several additional unidentified fact witnesses. (Dkt. No. 67 at pg 2; Dkt. No. 68 at ¶ 12). Included among these unidentified witnesses are: two firefighters who were involved in putting out the car fire and would have been responsible for taking Ms. Buruato's pulse; unidentified Zapata County Deputies who were among the first responders to the scene; unidentified Zapata County Deputies who arrested Mr. Hernandez at the scene; and an employee of the Department of Public Safety ("DPS") who may have been at the scene of the accident and taken measurements. (Dkt. No. 67 at pgs. 2-3; *See* Dkt. No. 68 at ¶ 12). These witnesses are believed to have information regarding whether Ms. Buruato was alive after the accident, the position of her body, who may have had access to her body at the scene, the exact reason for Mr. Hernandez's arrest, and whether he had any involvement in causing the accident.[1] (Dkt. No. 67 at pgs. 2-3, 5).

Plaintiffs allege that they were unaware of these new witnesses, despite having interviewed employees of the Zapata County Sherriff's Department and the Zapata County Fire Department prior to filing this lawsuit. (*Id.* at pg. 6). However, it is unclear whether the parties interviewed the five fact witnesses deposed on December 4th and 5th prior to their depositions. (*Id.*). Had they done so, it appears probable that they would have discovered the existence of these unidentified fact witnesses sooner. Moreover, the fact that the parties did not find out about these new witnesses until the depositions held on December 4th and 5th, the final two days of the discovery period, could have been avoided had they exercised diligence and scheduled

---

[1] Specifically, Plaintiffs claim that it is unclear from the testimony given by the witnesses deposed so far whether Ms. Buruato was found on her back, her side, or on her stomach. (Dkt. No. 67 at pg. 5). Plaintiffs allege that the position of Ms. Buruato's body is important in determining whether she was alive after the accident and whether her body was moved. (*Id.*). Furthermore, one of the DPS photographs is of a letter that was found lying next to Ms. Buruato's body. (*Id.* at pg. 4). The letter was written by Justice of the Peace Juan Guevara to Mr. Hernandez directing him not to stalk or harass Ms. Buruato. (*Id.*). During her deposition on December 4th, DPS Trooper Carol Mata ("Trooper Mata") stated that the letter was the only thing at the scene that was not wet from the firefighters' efforts to put out the fire and not covered in ashes. (*Id.*). According to Trooper Mata's deposition testimony, she found this suspicious and determined that the letter had been planted next to Buruato's body. (*Id.*).

their depositions in a timely manner.[2] (*See Id.* at pg. 2). Here, the parties claim that they were diligent, but they do not adequately explain to the Court why they did not investigate these fact witnesses earlier in the case.

Moreover, Plaintiffs' counsel contends that the discovery time period Plaintiffs agreed to was unrealistic given the complexity of the issues involved in this case. However, Plaintiffs' counsel fails to explain how the complexities of this case warrant an extension or why he agreed on two occasions to discovery deadlines that he felt were unreasonable. Furthermore, while Plaintiffs' counsel claims his burdensome schedule, caused by his firm's merger, prevented him from meeting the discovery deadline, such an excuse does not constitute good cause. Plaintiffs' counsel should have anticipated that his workload would increase as a result of his firm's merger, and he should have planned accordingly. As stated by the Ninth Circuit, "carelessness is not compatible with a finding of diligence and offers no reason for a grant of relief." *Johnson v. Mammoth Recreations, Inc.*, 975 F.2d 604, 609 (9th Cir. 1992).

Additionally, Plaintiffs move the Court to allow them more time to conduct further written discovery. First, Plaintiffs allege that they have had difficulty coordinating and scheduling their expert inspections of the vehicle involved in the accident and obtaining the experts' completed reports. (Dkt. No. 67 at pg. 6). However, Plaintiffs were already granted an extension of the discovery period for this very reason. (Dkt. No. 41). That they seek another extension for the exact same reason shows a lack of diligence on Plaintiffs' part. Second, Plaintiffs state in their motion to extend the discovery period that their requests for discovery were met by Defendant with insufficient documents and that they need additional time to

---

[2] Additionally, it is important to note that Plaintiffs' counsel filed a Motion for Protective Order requesting that the Court reschedule the December 5, 2008 depositions for either December 10th, 11th, 18th, or 19th because of Plaintiffs' counsel's planned vacation with his wife. (Dkt. No. 60 at pg. 4). Thus, the only reason Plaintiffs' counsel found out about the witnesses discovered through Fernando Hernandez' testimony was because the Court overruled his motion and ordered him to attend the deposition. (*See* Dkt. No. 67 at pg. 5).

complete discovery and obtain responsive documents. (Dkt. No. 67 at pgs. 7-8). While Plaintiffs allege difficulties in obtaining adequate responses to their discovery requests, they never sought the aid of the Court or filed a proper motion to compel.[3] Thus, Plaintiffs have failed to show sufficient efforts to compel Defendants to produce responsive documents. *See Smith v. BCE Inc.*, 225 Fed.Appx. 212, 217 (5th Cir. 2007) (unpublished) ("A diligent party attempts to compel discovery through the presiding court after opposing counsel unjustly refuses to provide responses.").

If diligence is the sole factor a court must analyze in determining whether good cause exists to extend a scheduling order deadline, then it is the case here that the parties have failed to meet this standard. Thus, the parties' motion to extend the discovery deadline as to the expert and fact witnesses must be denied for their dilatory conduct. However, in determining whether good cause exists, the Fifth Circuit has applied the four-factor test – previously stated in section II.a. of this order – in the context of, for example, untimely motions to amend the pleadings. *See S&W Enters., LLC*, 315 F.3d at 536. Based on the Court's review of the case law, it is unclear whether that test applies in the context of an untimely motion to extend the discovery deadline. *See, e.g., McFerrin*, 2007 U.S. Dist. LEXIS 91022, at *2; *see, e.g., Carmona*, 2006 U.S. Dist. LEXIS 88868, at *6-7. Even assuming that this four-factor balancing test does apply, the parties have failed to show that good cause exists to amend the scheduling order.

The first factor, the explanation for the failure to complete discovery within the discovery deadline, heavily weighs against a continuance. As detailed above, in spite of a three-month extension of the discovery deadline, the parties have shown a complete lack of diligence in timely completing discovery and in failing to notify the Court of their scheduling problems.

---

[3] On October 23, 2008, Plaintiffs filed a motion to compel, but it was stricken by the Court for failure to include a certificate of conference, as required by local rules. (Dkt. No. 52; Dkt. No. 55). Plaintiffs never re-filed this motion.

"The good cause standard requires the 'party seeking relief to show that the deadlines cannot reasonably be met despite the diligence of the party needing the extension.'" *SW. Bell Tel. Co. v. City of El Paso*, 346 F.3d 541, 546 (5th Cir. 2003) (citing *S&W Enters., LLC* 315 F.3d at 535 (5th Cir. 2003)); *see Rivera*, 2007 U.S. Dist. LEXIS 41401, at *2.

At first glance, the second and third factors, the importance of the proposed additional discovery and the potential prejudice of not allowing that discovery, could appear to weigh in favor of amending the scheduling order. However, as explained below, the Court is not persuaded. For instance, with respect to Deputy Guerra, the parties do not even attempt to explain either the importance of his potential deposition or why they would be prejudiced if unable to conduct this deposition.

As to the expert witnesses, while the Court concedes that the parties' inability to depose each other's experts may be less than ideal insofar as it relates to their preparation for trial, the parties have already designated experts and produced their expert reports. In this respect, denial of the instant motion simply presents a mere inconvenience to the parties. Both parties will still have the opportunity to examine the experts on either direct or cross-examination during trial.[4] Furthermore, Defendant argues that expert witness depositions are necessary because Plaintiffs' expert reports are inadequate (Dkt. No. 68 at ¶ 11). Here, Defendant's position is undermined because it did not deem the inadequacy of the expert reports important enough to seek the Court's assistance in securing Plaintiffs' compliance. Moreover, if the depositions were so important, then the parties would have either (1) been diligent in scheduling the expert depositions, or (2) brought the issue before the Court in a timely manner.

---

[4] In fact, there are other ways for the parties to investigate expert witness testimony. For example, the parties, along with their respective expert witnesses, could agree to meet with each other informally.

Regarding the unidentified fact witnesses, as stated above, these witnesses were only discovered through the depositions conducted on December 4th and 5th, the last two days of the discovery period. These depositions were noticed by Defendant at the eleventh hour of the discovery period, and Plaintiffs sought to postpone the depositions on December 5th. (*See* Dkt. No. 60). Thus, the parties' lack of diligence in discovering these witnesses belie their importance to the parties' respective cases.[5] Furthermore, granting the parties leave to conduct these requested depositions would appear to amount to a fishing expedition. The exact identities of these individuals remain unverified, and it is unclear whether they even have any relevant information to provide. While Plaintiffs allege that the testimony of these witnesses is necessary in order to clarify discrepancies in the testimony of the already-deposed fact witnesses, this is too conjectural a basis on which to grant the requested extension.[6]

While Defendant does not identify any particular prejudice that would result from the additional fact witness depositions, the disruption to the Court's docket would be substantial were the extension granted. Whenever additional depositions are conducted, both parties must expend additional resources and invest time in conducting them. Thus, prejudice generally results to the party opposing additional depositions. However, in this case, prejudice will not result from denying the parties' request for an extension of time to conduct depositions of unidentified fact witnesses. Here, both parties request additional time to conduct the depositions of the unidentified fact witnesses. The issue then becomes whether these depositions are important to the case. As discussed above, the speculative nature of the proposed testimony

---

[5] The same is true of Plaintiffs' claim that they need additional time to obtain and review responsive documents from Defendant, an issue Plaintiff did not bring to the Court's attention until after the passing of the extended discovery deadline.

[6] Again, nothing prevents the parties from continuing, informally, their investigations and interviews of any fact witnesses.

13

suggests that they are not. Accordingly, neither side will be prejudiced by the exclusion because there is nothing concrete for them to obtain. Furthermore, the requested extension of the discovery deadline would certainly delay the dispositive motion deadline and the trial. Thus, after review of the second and third factors, the Court finds that these factors do not outweigh the lack of diligence by the parties and the disruption to the Court's docket.

Finally, the fourth factor is the availability of a continuance to cure the prejudice. While a continuance could cure any potential prejudice, here, the integrity of the Court's scheduling order and the importance of deterring such dilatory behavior by the parties weighs against granting a continuance. A continuance would simply result in additional delay, where the parties have already been granted a ninety-day extension. *See Geiserman*, 893 F.2d at 792. Furthermore, a continuance would not prevent future dilatory behavior, nor would it serve to enforce the Court's scheduling order. *See id.*

Under the diligence standards, the parties have failed to show that good cause exists for extending the discovery deadline as to Deputy Guerra, the expert witnesses, unidentified fact witnesses, and written discovery. The parties have also failed to show that good cause exists under the four-factor balancing test. The additional discovery may be of some importance to the parties' respective cases, and the Court's denial of their requested continuance may cause them minimal prejudice. However, these factors are outweighed by the parties' dilatory conduct and the Court's interest in maintaining the integrity of the scheduling order. Here, the parties were granted five months in which to conduct discovery. The parties were then granted a three-month extension, allowing them a total of over eight months to complete discovery. Having balanced the equities and finding no good cause to extend the scheduling order, the Court finds that a continuance should be denied.

### III. Conclusion

As such, Plaintiffs' motion (Dkt. No. 67) is DENIED in its entirety. Defendant's motion (Dkt. No. 68) is DENIED in part and GRANTED in part. Defendant will have until January 30, 2009 to depose Mr. Hernandez. The parties will have until February 2, 2009 to file contested motions. However, the remaining deadlines set forth in the amended scheduling order remain unaltered.

IT IS SO ORDERED.

SIGNED this 21st day of January, 2009.

J. Scott Hacker
United States Magistrate Judge

TO ENSURE PROPER NOTICE, EACH PARTY WHO RECEIVES THIS NOTICE SHALL FORWARD A COPY OF IT TO EVERY OTHER PARTY AND AFFECTED NON-PARTY EVEN THOUGH THEY MAY HAVE BEEN SENT ONE BY THE COURT.